IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Cynthia Cook, Individually, and as Mother and Next Friend of LR, a Disabled Person<br>3738 Silverpark Court<br>Suitland, MD 20746,<br><br>and<br><br>LR<br>3738 Silverpark Court<br>Suitland, MD 20746,<br><br>    Plaintiffs,<br><br>    v.<br><br>Children's National Medical Center,<br>111 Michigan Avenue, N.W.<br>Washington, D.C. 20010,<br><br>    Defendant. | Case No. _____ |

## COMPLAINT

COMES NOW the Plaintiffs, Cynthia Cook, Individually, and as Mother and Next Friend of LR, a Disabled Person, and LR, by and through their attorneys, John Lowe and Michael M. Wilson, and represent to this Honorable Court as follows:

(Jurisdiction and Parties)

1. The Plaintiffs, Cynthia Cook, individually, and as Mother and Next

Friend of LR, a disabled person, and LR are residents and domiciliaries of the State of Maryland. They reside at 3738 Silverpark Court, Suitland, MD, 20746.

2. Defendant Children's National Medical Center (hereinafter referred to as CNMC) is a hospital with its principal place of business located at 111 Michigan Avenue, N.W., Washington, D.C. 20010.

3. All acts and/or omissions relating to Plaintiffs' claims against Defendant CNMC took place within the District of Columbia.

4. Pursuant to 28 U.S.C. Section 1391(a)(2), the proper venue for this action is Washington, District of Columbia, as a substantial part of the events or omissions giving rise to the claims against the Defendant occurred in the District of Columbia and Defendant CNMC has its principal place of business in the District of Columbia.

5. The matter in controversy exceeds the sum of $75,000. As a result of the incidents in this case, LR was severely injured by the medical negligence of Defendant, its employees, and its agents. Moreover, claims of Cynthia Cook and LR well in excess of $75,000 have been damaged and/or lost as a result of spoliation by Defendant.. LR is suffering from mental retardation and will require care for the remainder of her life. Cynthia Cook, mother of LR, under Maryland law is legally responsible to provide the necessary care to LR for the remainder of their joint lives.

6. As the matter in controversy exceeds the sum of $75,000, and the Plaintiffs and the Defendant are diverse as set forth in 28 U.S.C. Section 1332,

this Honorable Court has diversity jurisdiction with respect to this action.

## Count 1
### Spoliation

7. Cynthia Cook presented to the Washington Hospital Center on or about April 22nd, 1991 at 10 p.m. with a history of premature rupture of membranes at 8:30 p.m. on April 22nd, 1991. The expected date of delivery was June 6th, 1991.

8. The onset of labor at the Washington Hospital Center was documented as being 1:30 a.m. on April 23rd, 1991. The mother was fully dilated by 6:00 a.m. The second stage of labor lasted fifteen minutes, and thus may be considered to have been a precipitous delivery.

9. The membranes were ruptured for ten hours and five minutes prior to delivery.

10. LR had Apgars of 6 at one minute and 8 at five minutes. The infant had respiratory distress. At five hours of age LR had a blood ph of 7.18, which was severely acidotic. LR was then Intubated.

11. On Day 3 of life, a cardiologist recommended ECMO "if conventional ventilation continued to fail".

12. LR was transferred from the Washington Hospital Center to CNMC for ECMO.

13. After a substantial period of time at CNMC, LR was returned to the Washington Hospital Center without ECMO having been performed.

14. Despite request, Defendant CNMC has failed to provide medical records concerning the care that it provided to LR in the postnatal period.

15. Despite request, Defendant CNMC has failed to provide bills and/or X rays concerning care rendered to LR in the postnatal period.

16. Defendant CNMC had a legal duty to create and maintain accurate and complete medical records, bills, and X rays concerning its care of LR but failed to maintain these materials and provide them to counsel for the Plaintiffs upon request.

17. The Plaintiffs hereby assert spoliation claims against Defendant CNMC under *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998) [Hereinafter referred to as *Holmes*.] In that case, the U.S. Court of Appeals for the D.C. Circuit certified questions to the D.C. Court of Appeals as to whether negligent or reckless spoliation of evidence is an independent and actionable tort in the District of Columbia. The D.C. Court of Appeals held that the District of Columbia does recognize a cause of action for negligent or reckless spoliation. The D.C. Court of Appeals held that the plaintiff in such an action must establish that (1) a potential civil action existed, (2) a legal or contractual duty on the part of the entity existed to preserve evidence relevant to that action, and (3) that the evidence required to be preserved is absent.

The plaintiffs specifically allege that, upon information and belief, medical records of treatment at Children's Hospital in April of 1991 would have been created and were either lost or destroyed.

18. Additionally, the D.C. Court of Appeals in *Holmes* held that the plaintiff, in order to prove the claim, must establish a "reasonable inference" that due to the

spoliation the plaintiff's ability to prevail in the underlying lawsuit was significantly impaired because of the absence of the evidence that was spoliated; and that there had been a "significant possibility" of success in the underlying potential civil action claim. 710 A.2d 846, 947 (D.C. 1998).

After the D.C. Court of Appeals' ruling on the certified questions, the U.S. Court of Appeals for the D.C. Circuit reversed the trial court's grant of summary judgment in favor of Defendant Amerex. 180 F.3d 294 (D.C. Cir. 1999).

19. It is specifically alleged that the plaintiffs in this action have potential civil actions against prospective defendants that include, but are not limited to, the Washington Hospital Center, the physicians who rendered treatment to LR while she was a patient at the Washington Hospital Center, and the physicians who rendered treatment to LR while she was a patient at CNMC in the post-natal period.

It is expected that the Plaintiffs will provide expert testimony that LR has suffered brain damage as a result of a hypoxic injury. The existing medical records demonstrate that LR was suffering from severe hypoxia, and LR was transferred from the Washington Hospital Center to CNMC to allow for ECMO to be performed to alleviate the severe hypoxia. Upon information and belief, the records of the treatment of LR at CNMC would contain observations of the degree of hypoxia, together with arterial blood gas laboratory values that would show the degree of hypoxia. Additionally, the Washington Hospital Center records are missing important laboratory values concerning the degree of hypoxia. Most likely

a copy of the entire medical record of LR at the Washington Hospital Center would have been provided to CNMC along with the patient so that CNMC could have as much information as possible to treat LR. This medical record should have been made a part of the chart at CNMC and maintained and preserved. Additionally, it is standard for the transferring institution, the Washington Hospital Center to contain a transfer summary stating the reason for the transfer, the condition of LR at the time of transfer, and this would probably contain the arterial blood gas values showing the degree of hypoxia at the time since the transfer was done to use ECMO to treat the hypoxia. Additionally the transfer summary would probably show the names of the physicians at the Washington Hospital Center and at CNMC who participated in the treatment of LR at the time and the substance of their conversations and particular the reasons for the transfer to CNMC and why LR was a suitable candidate for ECMO treatment. It is expected that the Plaintiffs will provide expert testimony that these missing or destroyed records would show that LR had a significant period of hypoxia that was not treated according to the standard of care, and that the delay or failure to treat the hypoxia was a substantial factor in the outcome of severe brain injury and mental retardation due to hypoxic injury. It is also expected that the missing or destroyed medical records and x rays would show the reasons for the hypoxia, which would include sepsis, and that the physicians failed to adequately treat the sepsis. It is also expected that the missing or destroyed x rays would also show the degree of hypoxia that LR was experiencing at the time by showing the condition of the lungs, and that

Page 7 of 12

LR was not provided adequate treatment for the hypoxia that resulted in her hypoxic brain injury.

Additionally it is expected that the Plaintiffs will provide competent expert testimony that the missing or destroyed medical records and X rays would have serial neurological examinations that would show when the brain damage occurred, and that the failure to time the brain injury significantly impairs the ability of the Plaintiffs to pursue their available claims for medical malpractice.

In summary, it is expected that the Plaintiffs will provide competent expert testimony that the missing CNMC medical records, bills, and X rays for its treatment during April of 1991 were critical to supporting valid causes of action against medical providers who rendered treatment to LR at the Washington Hospital Center and CNMC for hypoxia, and that those missing records would show that the treatment was negligent and that appropriate treatment would have prevented the hypoxic brain damage experienced by LR.  20.  It is specifically alleged that Defendant CNMC had a legal and contractual duty to preserve and maintain medical records, bills, and X rays pertaining to its treatment of LR in the postnatal period until such time as LR reached the age of 21, when her statute of limitations would expire under D.C. law.  The existence of this legal and contractual duty will be established by expert testimony.  The testimony of plaintiffs' expert witnesses is expected to be based upon discovery to be conducted in this action, which may include such references as  JCAHO regulations concerning CNMC, D.C. regulations concerning CNMC, internal

protocols of CNMC over the past 21 years, the usual and customary practice concerning medical records, bills, and X ray retention followed by CNMC for the past 21 years, federal Medicaid rules and regulations concerning CNMC, federal Medicare rules and regulations concerning CNMC, and other national standards of care with reference to the maintenance and preservation of medical records, bills, and X rays by hospitals pertaining to care to infants.

20. It is specifically alleged that a reasonable inference exists that, due to the spoliation of evidence by CNMC, the plaintiffs' ability to prevail in the potential civil actions referred to in Paragraph 19 has been significantly impaired. This will be the subject of expert testimony based upon review of the medical records, bills, and X rays of the care of LR with reference to the persons and institutions who would be involved in the potential civil actions; and also medical records, bills, and X rays concerning subsequent care of LR, current medical reports concerning LR, examinations of LR by experts retained by the Plaintiffs and the Defendant, depositions, interrogatory answers, responses to requests to produce, responses to requests for admissions, and other materials customarily relied upon by expert witnesses of the same or similar specialty. This is set forth in greater detail in Paragraph 19, supra.

21. It is specifically alleged that if the spoliated evidence had been preserved by Defendant CNMC, there does exist a significant possibility of success in the underlying potential claims within the framework created by the D.C. Court of Appeals in delineating the D.C. cause of action for spoliation of

evidence. This requirement will also be satisfied by expert testimony as set forth by the D.C. Court of Appeals in *Holmes v. Amerex,* 710 A.2d 846, 947 (D.C. 1998).

22. As a direct and proximate result of the aforesaid negligent or reckless failure to preserve LR's postnatal medical records, X rays, and bills, there was a compensable significant impairment of LR's potential claims against potential defendants as set forth in Paragraph # 19, *supra*.

As a result of the Defendant's negligent spoliation of medical records, bills, and X rays of treatment of LR at CNMC in 1991, Plaintiff Cynthia Cook Individually, and as Next Friend of LR, and LR, have suffered such damages as are recognized under the District of Columbia law pertaining to spoliation under *Holmes v Amerex*.

WHEREFORE, Cynthia Cook, Individually, and as Mother and Next Friend of LR, and LR, demand judgment against Defendant Children's National Medical Center for spoliation of evidence in the full sum of Thirty Million Dollars ($30,000,000.00), plus interest and costs incurred.

## Count 2
### Medical Malpractice

23. Counts 1 – 22 are hereby realleged as if fully set forth herein.

24. Defendant CNMC accepted LR for ECMO treatment as a transfer patient from the Washington Hospital Center, kept LR for a period of time in excess of 30 hours, but never performed the ECMO treatment.

25. Defendant CNMC, acting by and through its agents, servants, employees, and apparent agents, breached applicable standards of care in, *inter alia*,

(a) Failing to appropriately evaluate LR for ECMO treatment;

(b) Subjecting LR to the trauma and hazards of transferring LR from the NICU at the Washington Hospital Center to the NICU at CNMC and the return;

(c) Failing to appropriately provide medical and nursing treatment to LR during the period of time that she was a patient at CNMC in 1991;

(d) Failing to appropriately provide medical care to LR after CNMC decided that it would not provide ECMO to her; and

(e) Defendant may have been negligent in other ways.

26. Defendant CNMC, acting through its employees, agents, servants, and apparent agents, failed to obtain appropriate informed consent to the procedure of accepting LR for ECMO, transferring her to CNMC, holding her for a period in excess of 30 hours, and then returning her to the Washington Hospital Center after never providing her with the anticipated ECMO treatment.

27. Upon information and belief, deviations set forth in Paragraph 25 and the lack of informed consent set forth in Paragraph 26 were, individually and collectively, substantial factors in causing the brain damage suffered by LR in the form of mental retardation. This brain damage is permanent.

28. As a direct and proximate result of the aforesaid negligence and failure to obtain informed consent, LR suffered mental retardation and brain damage. LR

has suffered extreme mental suffering as she comprehends and understands that she is unable to perform required daily tasks, and she has attempted to kill herself. She will require around the clock care for the remaining duration of her natural life. As a result of this required future care, LR is expected to incur future medical bills for medical care, occupational therapy, nursing care, special facilities, and other care commensurate with her acquired brain damage.  Under Maryland law, Cynthia Cook, natural mother of LR, also has a legal duty to provide care for LR during the remainder of their joint lives.

WHEREFORE, Cynthia Cook, Individually, and as Mother and Next Friend of LR, and LR, demand judgment against Defendant CNMC for compensatory damages in the full sum of Forty Million Dollars ($40,000,000.00), plus interest and costs incurred.

Date:  June 4, 2010

Respectfully submitted,

*/s/ John C. Lowe*
John C. Lowe
D.C. Bar No. #427019
John Lowe, P.C.
5920 Searl Terrace
Bethesda, MD  20816
(301) 320-3300
Email:  johnlowe@johnlowepc.com

/s/ Michael M. Wilson
Michael M. Wilson
D.C. Bar No. #941674
U.S. Court of Appeals
for the District of Columbia #30702
1120 19th Street, N.W. Suite LL-11
Washington, D.C. 20036
(202) 223-4488
Fax: (202) 280-1414
Email: wilson@wilsonlaw.com

*Counsel for the Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

/s/ Michael M. Wilson
Michael M. Wilson