UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CYNTHIA COOK, Individually and      )
as Mother and Next Friend of LR,    )
a Disabled Person, et al.,          )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )    Civil Action No. 10-0937 (PLF)
                                    )
CHILDREN'S NATIONAL MEDICAL         )
CENTER,                             )
                                    )
            Defendant.              )
_____)

OPINION

In Holmes v. Amerex Rent-A-Car, 710 A.2d 846 (D.C. 1998), the District of Columbia Court of Appeals recognized a new, independent tort: negligent or reckless spoliation of evidence. See Holmes v. Amerex Rent-A-Car, 710 A.2d at 847-48; see also Mazloum v. District of Columbia Metro. Police Dep't, 522 F. Supp. 2d 24, 55 (D.D.C. 2007). That tort permits a plaintiff to recover against a defendant who "negligently or recklessly destroyed or allowed to be destroyed evidence that would have assisted the plaintiff in pursuing a claim against a third party." Holmes v. Amerex Rent-A-Car, 710 A.2d at 848.

In this case, plaintiffs Cynthia Cook and her child, LR, have filed an amended complaint against defendant Children's National Medical Center ("CNMC") in which they make a single claim: that CNMC is liable for negligent or reckless spoliation of LR's postnatal medical records from April 1991. This matter now is before the Court on CNMC's motion to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the

alternative, under Rule 8(a)(2). Upon consideration of the parties' papers, the oral arguments presented by counsel, the relevant legal authorities, and the entire record in this case, the Court will grant CNMC's motion to dismiss.[1]

I. BACKGROUND

According to the amended complaint, Cynthia Cook prematurely gave birth to her child, LR, on April 23, 1991 at the Washington Hospital Center. See Am. Compl. ¶¶ 7-8.[2] As plaintiffs describe it, at 8:30 p.m. on April 22, 1991, Ms. Cook began experiencing "premature rupture of membranes," that is, her amniotic sac began to break. Id. ¶ 7. LR's expected date of delivery, however, was not for another 45 days. See id. ¶ 7. So at 10:00 p.m. on April 22, Ms. Cook went to the Washington Hospital Center, and "[t]he onset of labor . . . was documented as being 1:30 a.m. on April 23[.]" Id. ¶ 8. Ms. Cook was fully dilated by 6:00 a.m. on April 23, and she delivered LR 15 minutes later. See id.

Shortly after birth LR began experiencing "respiratory distress." Am. Compl. ¶ 10. And within five hours of birth, LR developed a "severely acidotic" blood pH of 7.18. Id. Although LR then was intubated, she continued to experience respiratory distress. See id.

---

[1] The papers reviewed in connection with the pending motion include: the original complaint ("Compl.") [Dkt. No. 1]; the amended complaint ("Am. Compl.") [Dkt. No. 2]; the defendant's motion to dismiss pursuant to Rule 12(b)(6) or, in the alternative, Rule 8(a)(2) ("Mot.") [Dkt. No. 4]; the plaintiffs' opposition to the defendant's motion to dismiss pursuant to Rule 12(b)(6) or, in the alternative, Rule 8(a)(2) ("Opp.") [Dkt. No. 5]; the defendant's reply memorandum of points and authorities in support of its motion to dismiss the amended complaint pursuant to Rule 12(b)(6) or, in the alternative, Rule 8(a)(2) ("Reply") [Dkt. No. 6].

[2] In ruling on a motion to dismiss for failure to state a claim, allegations in a complaint, and reasonable inferences drawn therefrom, must be accepted as true. See, e.g., Phillips v. Fulwood, 616 F.3d 577, 581 (D.C. Cir. 2010); Hill v. WMATA, 309 F. Supp. 2d 63, 65 n.1 (D.D.C. 2004). Here, the facts are taken from the plaintiffs' amended complaint.

¶¶ 11-12. On the third day of LR's life, while LR was still at the Washington Hospital Center, a cardiologist recommended that if conventional ventilation procedures like intubation continued to fail, LR should be placed on extracorporeal membrane oxygenation ("ECMO"), id. ¶ 11 — a procedure that "involves circulating and oxygenating blood outside [a] patient's body." Rice v. United States, No. 96-5175, 1997 WL 353009, at *1 n.2 (10th Cir. June 26, 1997).

LR's respiratory problems persisted, and LR then was transferred from the Washington Hospital Center next door to CNMC so that LR could be placed on ECMO. See Am. Compl. ¶ 12. But "[a]fter a substantial period of time at CNMC, LR was returned to the Washington Hospital Center without [the] ECMO [procedure] having been performed." Id. ¶ 13. Plaintiffs allege that, due to "severe hypoxia," LR suffered brain damage, id. ¶ 19, causing mental retardation that will require care for the rest of her life. Id. ¶ 5.

At some later point in time, plaintiffs requested that CNMC provide them with various records that CNMC itself created or otherwise obtained from the Washington Hospital Center. See Am. Compl. ¶¶ 14-16, 19. Specifically, plaintiffs requested that CNMC provide the following: (1) "medical records concerning the care that [CNMC] provided to LR in the postnatal period," id. ¶ 14; (2) "bills and/or X rays concerning care rendered to LR in the postnatal period," id. ¶ 15; and (3) "a copy of the entire medical record of LR at the Washington Hospital Center [that most likely] would have been provided to CNMC," as well as Washington Hospital Center's "transfer summary" stating, among other things, "the reason for the transfer" to CNMC and "the condition of LR at the time of transfer." Id. ¶ 19. Plaintiffs allege, however, that CNMC has failed to provide these requested medical records; plaintiffs further allege that CNMC negligently or recklessly lost or destroyed these records. See id. ¶¶ 14-17, 19.

3

On June 7, 2010, plaintiffs filed suit in this Court against CNMC. Their original complaint made two claims: (1) negligent or reckless spoliation of evidence, see Compl. ¶¶ 7-22; and (2) medical malpractice. See id. ¶¶ 23-28. Plaintiffs requested $40 million in compensatory damages. Id. at 11. Prior to any action taken by CNMC, plaintiffs filed an amended complaint against CNMC on June 21, 2010. This amended complaint makes a claim only for negligent or reckless spoliation of evidence, see Am. Compl. ¶¶ 7-22, not for medical malpractice, and it requests $30 million in compensatory damages. See id. at 9.

In response, CNMC filed a motion to dismiss the plaintiffs' amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, under Rule 8(a)(2). Plaintiffs filed an opposition, and CNMC replied. The Court heard oral argument on December 1, 2010. Thus, this matter now is ripe for decision.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, Bell Atlantic Corp. v. Twombly, 550 U.S. at 555, the complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; Phillips v. Fulwood, 616 F.3d at 581. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See id. at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

## III. DISCUSSION

Because this case is before the Court on the basis of diversity jurisdiction, see Am. Compl. ¶¶ 1-6, the Court is bound to apply state substantive law. See In re Sealed Case, 67 F.3d 965, 968 (D.C. Cir. 1995). The parties agree that this case is governed by the substantive tort law of the District of Columbia, and the question presented is whether the plaintiffs' amended complaint contains sufficient factual matter, accepted as true, to state a claim for negligent or reckless spoliation of evidence under Holmes v. Amerex Rent-A-Car. The Court concludes that the amended complaint fails to state such a claim.

*A. Negligent or Reckless Spoliation of Evidence Under District of Columbia Law*

In 1997, in the Holmes case, the D.C. Circuit certified two questions of law to the District of Columbia Court of Appeals:

> [1] Under District of Columbia law, may a plaintiff recover against a defendant who has negligently or recklessly destroyed or allowed to be destroyed evidence that would have assisted the plaintiff in pursuing a claim against a third party?
>
> [2] If a plaintiff may proceed under such a theory, what standard of proximate cause must he meet?

Holmes v. Amerex Rent-A-Car, 113 F.3d 1285, 1286 (D.C. Cir. 1997).

The D.C. Court of Appeals responded to these questions by expressly recognizing a new, independent tort for negligent or reckless spoliation of evidence. See Holmes v. Amerex Rent-A-Car, 710 A.2d at 847. That tort permits a plaintiff to recover against a defendant who "negligently or recklessly destroyed or allowed to be destroyed evidence that would have assisted the plaintiff in pursuing a claim against a third party." Id. at 848. To prevail on such a tort claim, a plaintiff ultimately must establish seven required elements:

> (1) [the] existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

Id. at 854; see also Mazloum v. District of Columbia Metro. Police Dep't, 522 F. Supp. 2d at 55.

Relying on Holmes, plaintiffs in this case make a single claim for negligent or reckless spoliation of evidence against CNMC. See Am. Compl. ¶¶ 7-22. In addressing the required elements of that tort, plaintiffs allege the following:

First, according to the amended complaint, "LR was severely injured by the medical negligence of Defendant, its employees, and its agents," Am. Compl. ¶ 5, and plaintiffs assert that they

> have potential civil actions against prospective defendants that include, but are not limited to, the Washington Hospital Center, the physicians who rendered treatment to LR while she was a patient at the Washington Hospital Center, and the physicians who rendered treatment to LR while she was a patient at CNMC in the post-natal period.

Id. ¶ 19.

Second, CNMC "had a legal and contractual duty to preserve and maintain medical records, bills, and X rays pertaining to its treatment of LR in the postnatal period until such time as LR reached the age of 21, when her statute of limitations would expire under D.C. law." Am. Compl. ¶ 19.

Third, CNMC negligently or recklessly lost or destroyed "medical records of [LR's] treatment at [CNMC] in April of 1991[.]" Am. Compl. ¶ 17; see also id. ¶¶ 14-16. The missing or destroyed records would show, among other things, "that LR had a significant period of hypoxia that was not treated according to the standard of care, and that the delay or failure to treat the hypoxia was a substantial factor in the outcome of severe brain injury and mental retardation due to hypoxic injury." Id. ¶ 19. These records therefore were allegedly "critical to supporting valid causes of action against medical providers who rendered treatment to LR at the

7

Washington Hospital Center and CNMC for hypoxia, and . . . th[e]se missing records would show that the treatment was negligent and that appropriate treatment would have prevented the hypoxic brain damage experienced by LR." Id.

Consequently, combining the fourth, fifth, and sixth elements, plaintiffs allege that there exists a proximate relationship between the impairment of their underlying causes of action and CNMC's loss or destruction of LR's medical records: that loss or destruction significantly impaired the plaintiffs' ability to prevail in their medical malpractice actions, in which they otherwise would have had a significant possibility of success. See id. ¶¶ 20-22.

Seventh, plaintiffs request $30 million in compensatory damages. Am. Compl. at 9.

### B. CNMC's Motion to Dismiss

CNMC contends that the amended complaint fails sufficiently to allege some of the required elements of a negligent or reckless spoliation claim, and further contends that the plaintiffs' allegations consist primarily of "'unadorned, the-defendant-unlawfully-harmed-me' accusations." Mot. at 7 (quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949). Although not entirely clear, it appears that CNMC's papers assert deficiencies regarding the first and fifth elements of the tort of negligent or reckless spoliation of evidence. During oral argument, counsel for the parties focused exclusively on the first element, the existence of a potential civil action. Because the Court concludes that the plaintiffs' amended complaint falls short on the first element, the Court need not address any other.

CNMC argues that this case does not fit under the framework set forth in Holmes v. Amerex Rent-A-Car, and thus that the Court would be improperly extending Holmes if it were to allow the plaintiffs' claim to proceed. According to CNMC, plaintiffs have alleged the existence of a potential civil action for medical malpractice against CNMC, instead of against a third party as is required under Holmes, and that CNMC is alleged to have destroyed records relevant to that medical malpractice action. See Reply at 1, 3; Mot. at 4-5. Such an allegation, according to CNMC, is insufficient under Holmes because "[s]poliation of evidence is a third-party claim." Reply at 1.

Plaintiffs' response to CNMC's argument is perplexing and inconsistent. In their papers, plaintiffs agree with CNMC's argument that spoliation is a third-party claim, but contend "that [CNMC] spoliated claims against individual [CNMC] physicians which are separate parties from CNMC, as well as claims against another hospital, the Washington Hospital Center, and the individual physicians treating patients at the Washington Hospital Center." Opp. at 2. During oral argument, however, plaintiffs' counsel asserted (1) that Holmes was not limited to third-party claims; (2) that plaintiffs have sufficiently alleged both a first-party and a third-party claim, one against CNMC, and the other against the Washington Hospital Center; and (3) that the injury to LR happened at CNMC, not the Washington Hospital Center.

The Court agrees with CNMC that negligent or reckless spoliation of evidence is a claim that can be brought *only* against a third party — as a reading of the D.C. Court of Appeals' opinion in Holmes makes abundantly clear. See Holmes v. Amerex Rent-A-Car,

710 A.2d at 848-49.³ Furthermore, the Court concludes that the plaintiffs' amended complaint fails to state such a third-party spoliation claim because the potential lawsuit for medical malpractice described in the amended complaint is not just against the Washington Hospital Center. It is one against *both* CNMC and the Washington Hospital Center, as well as the doctors employed by both.

The District of Columbia Court of Appeals limited the new tort of negligent or reckless spoliation of evidence to third-party spoliation because, as it recognized, a remedy already exists for first-party spoliation — an instruction to the jury in the underlying action permitting it to draw an adverse inference against the spoliator.⁴ As the court of appeals made

---

³ First-party spoliation "refers to the spoliation of evidence by a party to the principal litigation," and is distinguished from thirty-party spoliation, which "refers to spoliation by a non-party" to the principal litigation. Howard Reg'l Health Sys. v. Gordon, No. 09-0476, 2011 WL 3501882, at *5 (Ind. Aug. 10, 2011). A first-party spoliator "'is a party to the underlying action who has destroyed or suppressed evidence relevant to the plaintiff's claims against [that] party.'" Mendez v. Hovensa, L.L.C., Civil Action No. 02-0169, 2008 WL 803115, at *7 (D.V.I. Mar. 24, 2008) (quoting Rizzuto v. Davidson Ladders, Inc., 905 A.2d 1165, 1173 n.4 (Conn. 2006)). By contrast, a third-party spoliator is alleged to have destroyed evidence relevant to the plaintiff's claims against another, but is "'not alleged to have committed the underlying tort as to which the lost or destroyed evidence related.'" Id. at *7 n.1 (quoting Rizzuto v. Davidson Ladders, Inc., 905 A.2d at 1173 n.4); see Carvajal v. Walgreen Co., Civil Action No. 10-23931, 2011 WL 2531204, at *2 n.1 (S.D. Fla. June 24, 2011) ("[T]hird-party spoliation claims . . . occur when a person or an entity, though not a party to the underlying action causing the plaintiff's injuries or damages, lost, misplaced, or destroyed evidence critical to that action.") (citing Martino v. Wal-Mart Stores, Inc., 908 So. 2d 342, 345 n.2 (Fla. 2005)); see also Superior Boiler Works, Inc. v. Kimball, No. 103,367, 2011 WL 3524110, at *6 (Kan. Aug. 12, 2011).

⁴ In doing so, Holmes followed an undisputed majority rule. Another district court recently noted that it had been unable "to identify a single jurisdiction in which a cause of action for negligent spoliation is cognizable against a first-party spoliator." Mendez v. Hovensa, L.L.C., 2008 WL 803115, at *7. Indeed, upon its own review of the law, this Court was able to find only one case that recognized a claim for first-party negligent or reckless spoliation of evidence, see Bondu v. Gurvich, 473 So. 2d 1307 (Fla. Dist. Ct. App. 1984), but that decision since has been overruled. See Martino v. Wal-Mart Stores, Inc., 908 So. 2d at 346-47.

explicit, the new tort of negligent or reckless spoliation of evidence was established only to fill an "open space" in the law where a plaintiff otherwise would be left without a remedy. Holmes v. Amerex Rent-A-Car, 710 A.2d at 849 (internal quotations and citation omitted). The court of appeals expressly concluded that

> [s]ome remedy . . . should be available to those whose expectancy of recovery has been eliminated or severely hampered through the negligent or reckless acts of another. In the third-party defendant scenario . . . , however, the already recognized remedy of permitting an adverse inference against the spoliator would serve no purpose. [B]ecause sanctions may not be levied upon a disinterested, independent third party, an independent tort action for negligent spoliation of evidence is the only means to deter the negligent destruction of evidence and to compensate the aggrieved party for its destruction. . . . For these reasons, we are willing to provide independent legal protection against negligent or reckless spoliation of evidence.

Id. (internal quotations and citation omitted) (alteration in original).

When a defendant is alleged to have negligently or recklessly destroyed evidence needed by a plaintiff for a potential civil suit against another, and that same defendant also is alleged to have committed the underlying tort giving rise to that potential civil suit — a first-party spoliator situation — "'a fact-finder may be permitted to draw an adverse inference from the failure of a party to preserve evidence within his exclusive control.'" Holmes v. Amerex Rent-A-Car, 710 A.2d at 848 (quoting Williams v. Washington Hosp. Ctr., 601 A.2d 28, 31 (D.C. 1991)). Such an adverse inference, however, is not available against a third-party spoliator, because that spoliator is not a party to the underlying action to which the destroyed evidence relates. See id. at 848-49. Consequently, the court in Holmes concluded that it was

11

"reasonable to extend . . . protection to a situation where the spoliator *is not a party to the underlying lawsuit*." Holmes v. Amerex Rent-A-Car, 710 A.2d at 848 (emphasis added).

The first element of Holmes therefore requires more than just the existence of *any* civil action. A plaintiff must sufficiently allege — and eventually establish at trial on the spoliation claim — the existence of a potential civil action in which the alleged spoliator will not be a party. See Holmes v. Amerex Rent-A-Car, 710 A.2d at 854; see also Mendez v. Hovensa, L.L.C., 2008 WL 803115, at *7 n.1 (a third-party spoliation claim arises where the alleged spoliator is "'not alleged to have committed the underlying tort to which the lost or destroyed evidence related'") (quoting Rizzuto v. Davidson Ladders, Inc., 905 A.2d at 1173 n.3); Carvajal v. Walgreen Co., 2011 WL 2531204, at *2 n.1 (same). The Court concludes that the plaintiffs' amended complaint fails because it presents a first-party spoliation claim against CNMC, arising from an underlying potential civil action of medical malpractice against CNMC, among others.

Plaintiffs' assertion in their opposition papers that there are no claims of medical malpractice against CNMC is plainly at odds with the express language of the amended complaint and the plaintiffs' own theory on how the medical malpractice occurred. As plaintiffs describe it, shortly after birth LR began experiencing "respiratory distress." Am. Compl. ¶ 10. And within five hours of birth, LR developed a "severely acidotic" blood pH of 7.18. Id. Although LR then was intubated, she continued to experience respiratory distress. See id. ¶¶ 11-12. On the third day of LR's life, while LR was still at the Washington Hospital Center, a cardiologist recommended that if conventional ventilation procedures like intubation continued to fail, LR should be placed on ECMO. Id. ¶ 11. LR's respiratory problems persisted, and LR then was transferred from the Washington Hospital Center next door to CNMC so that LR could

12

be placed on ECMO "to alleviate . . . severe hypoxia." Id. ¶ 19; see id. ¶ 12. But "[a]fter a substantial period of time at CNMC, LR was returned to the Washington Hospital Center without [the] ECMO [procedure] having been performed." Id. ¶ 13. According to plaintiffs, because of "the delay or failure to treat the hypoxia," id. ¶ 19, LR suffered brain damage, causing mental retardation that will require care for the rest of LR's life. Id. ¶ 5.

As these alleged facts show, and as plaintiffs expressly state in their amended complaint: "LR was severely injured by *the medical negligence of Defendant*, its employees, and its agents[.]" Am. Compl. ¶ 5 (emphasis added); see also id. ¶ 14 ("CNMC has failed to provide medical records concerning the care that *it* provided to LR[.]") (emphasis added), ¶ 17 (reference to "medical records of treatment at Children's Hospital in April of 1991"), ¶ 19 ("It is specifically alleged that the plaintiffs in this action have potential civil actions against . . . the Washington Hospital Center, the physicians who rendered treatment to LR while she was a patient at the Washington Hospital Center, and the physicians who rendered treatment to LR while she was a patient at CNMC in the post-natal period."), ¶ 19 (reference to CNMC's treatment and "medical providers who rendered treatment to LR . . . at CNMC"). Plaintiffs' counsel also represented to the Court during oral argument that the injury to LR happened at CNMC, not the Washington Hospital Center. Furthermore, plaintiffs allege that CNMC negligently or recklessly destroyed records relevant to that underlying medical malpractice action against CNMC itself. As plaintiffs assert, "missing CNMC records . . . were critical to supporting valid causes of action against medical providers who rendered treatment to LR at . . . CNMC for hypoxia[.]" Am. Compl. ¶ 19.

Because the plaintiffs' amended complaint alleges that CNMC will be a party to the underlying medical malpractice for which the destroyed or suppressed records are relevant, plaintiffs' spoliation claim is not a third-party claim. Plaintiffs make a first-party spoliation claim against CNMC — a claim outside the scope of Holmes.[5]

To repeat, the tort of negligent or reckless spoliation of evidence recognized by the D.C. Court of Appeals applies only when the alleged spoliator will not be a party to the underlying tort action to which the lost or destroyed evidence relates. Holmes v. Amerex Rent-A-Car, 710 A.2d at 854; see also Mendez v. Hovensa, L.L.C., 2008 WL 803115, at *7 n.1; Carvajal v. Walgreen Co., 2011 WL 2531204, at *2 n.1. In other words, a third-party spoliator must be a stranger to the underlying action. See Holmes v. Amerex Rent-A-Car, 710 A.2d at 849 (describing a third-party spoliator as a "disinterested, independent third party") (internal quotations and citation omitted). Here, CNMC, the alleged spoliator, will be one of the defendants in the underlying medical malpractice action. Thus, CNMC cannot be a third-party spoliator regardless of whether plaintiffs name other parties — the Washington Hospital Center, individual physicians, or any other entity — in the underlying medical malpractice. Accordingly, plaintiffs have failed sufficiently to allege the first element under Holmes: the existence of a potential civil action in which CNMC, the alleged spoliator, is not a party. See Holmes v.

---

[5] Presumably in an effort to state a third-party spoliation claim, plaintiffs assert in their opposition papers that the physicians who rendered treatment to LR while she was a patient at CNMC "are separate parties from CNMC[.]" Opp. at 2. The Court is not persuaded. Plaintiffs allege no facts in their amended complaint and cite no law in support of their conclusory assertion that the physicians who rendered treatment at CNMC should be considered separate from CNMC itself in the underlying medical malpractice action. Indeed, plaintiffs themselves refer to such physicians as the "employees" or "agents" or CNMC. Am. Compl. ¶ 5.

Amerex Rent-A-Car, 710 A.2d at 848, 854. The plaintiffs' amended complaint therefore must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs' amended complaint fails to state a claim for negligent or reckless spoliation of evidence. CNMC's motion to dismiss [Dkt. No. 4] therefore will be GRANTED.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

DATE: September 13, 2011

/s/
PAUL L. FRIEDMAN
United States District Judge